UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL THOMPSON,

    Plaintiff,

v.

                                    Case No. 24-cv-11963
                                    Hon. Matthew F. Leitman

ADAM KANDULSKI, *et al.*,

    Defendants.
_____/

**<u>ORDER (1) OVERRULING PLAINTIFF'S OBJECTIONS (ECF No. 51) TO REPORTS AND RECOMMENDATIONS (ECF Nos. 46, 48); (2) ADOPTING RECOMMENDED DISPOSITION OF REPORT AND RECOMMENDATIONS (ECF Nos. 46, 48); (3) GRANTING DEFENDANTS HOOVER'S AND DYE'S MOTIONS TO DISMISS (ECF Nos. 16, 33); (4) GRANTING PLAINTIFF'S MOTION TO AMEND (ECF No. 43); (5) TERMINATING AS MOOT DEFENDANT KEMP'S MOTION TO DISMISS (ECF No. 24); (6) DISMISSING CLAIMS AGAINST DEFENDANT KANDULSKI; AND (7) TERMINATING AS MOOT PLAINTIFF'S MOTION TO STAY (ECF No. 50)</u>**

      Plaintiff Michael A. Thompson is a state prisoner currently in the custody of the Michigan Department of Corrections (the "MDOC"). In this action, Thompson asserts claims against four medical professionals who, he alleges, denied him medical care in violation of the Eighth Amendment. Those medical professionals are: Adam Kandulski, M.D., Anjanette Kemp, M.D, Barbara Hoover, P.A. (f/k/a Barbara Bien), and Valerie Dye, M.D. (*See* Compl., ECF No. 1.)

1

Now before the Court are three motions to dismiss the case filed by Hoover, Kemp, and Dye. (*See* Mots., ECF Nos. 16, 24, 33.) The assigned Magistrate Judge issued two Reports and Recommendations in connection with those motions. In the first Report and Recommendation, the Magistrate Judge recommended that the Court deny Kemp's motion to dismiss as moot (the "Amendment R&R"). (*See* Amendment R&R, ECF No. 46.) The Magistrate Judge explained that Kemp's motion was moot because after Kemp filed that motion, Thompson filed a motion to amend his Complaint to remove Kemp as a Defendant, and the Magistrate Judge recommended that the Court grant that motion to amend. (*See id.*) In the second Report and Recommendation, the Magistrate Judge recommended that the Court grant Hoover's and Dye's motions and dismiss the claims against them on the basis that those claims are time-barred (the "Limitations R&R"). (*See* Limitations R&R, ECF No. 48.) In the Limitations R&R, the Magistrate Judge also *sua sponte* recommended that the Court dismiss the claims against Kandulski under 28 U.S.C. § 1915(e) because those claims are also time-barred. (*See id.*) Thompson filed objections to the Limitations R&R (ECF No. 51) and Dye, alone, filed a response (ECF No. 53).

For the reasons stated below, the objections are **OVERRULED**[1] and the recommended dispositions of the Limitations R&R and the Amendment R&R are **ADOPTED**. Hoover's and Dye's motions to dismiss are **GRANTED** because, as the Magistrate Judge concluded, Thompson's claims against them are time-barred. Further, Thompson's motion to amend the Complaint to eliminate Kemp as a party is **GRANTED**. Kemp's motion to dismiss is therefore **TERMINATED AS MOOT**. Finally, the claims against Kandulski are **DISMISSED**.

# I

## A

The factual background of this case is fully set forth in the Limitations R&R. (*See* Limitations R&R, ECF No. 48.) The Court recounts here only the most basic facts needed to understand the nature of Thompson's claims.

From at least 2011 until 2014, Thompson was housed at the Saginaw Correctional Facility. (*See* Compl., ECF No. 1, PageID.6.) While there, he was "under the medical care of Kandulski and Kemp." (*Id.*) In 2011, Thompson was "sent to the emergency room" for "issues with [his] kidneys." (*Id.*) Emergency department records indicate that Thompson had a medical history of "renal disease,

---

[1] On April 24, 2025, Thompson filed a motion to stay these proceedings on the basis that he was being "denied access to the courts" and he needed additional "time to research and respond to the R&R correctly." (Mot., ECF No. 50, PageID.336.) On May 1, 2025, Thompson timely filed his objections to the R&R. (*See* Obj., ECF No. 51.) Accordingly, Thompson's motion to stay is **TERMINATED AS MOOT**.

3

including renal failure, [h]istory of [h]ypertension, that is not being treated." (8/9/2011 Med. Records, ECF No. 51, PageID.356.) Test results identified "[e]levated creatinine." (*Id.*, PageID.357.) Accordingly, the hospital provider instructed Thompson to "[h]ave [his] potassium checked" the following week, "[s]tick to a low potassium diet," and follow up with a designated specialist. (*Id.*, PageID.357.)

Thompson claims he did not have a follow-up appointment with the recommended specialist, and that at the time, the Saginaw Correctional Facility "had no diet line or any other way to place [him] on a low potassium diet." (Compl., ECF No. 1, PageID.6.) He claims that Kandulski and Kemp "did nothing but give [him] more [medication] to get [his] blood pressure under control." (*Id.*)

Approximately three years later, in 2014, Thompson was transferred to the Muskegon Correctional Facility so that he could be placed on a low potassium diet. (*See id.*) From the time of his transfer in 2014 until "Sep[tember] 2020," Thompson was under the medical care of Hoover and Dye. (*See id.*) He claims that, under their care, his "condition got worse" and his blood pressure continued to be "not under control." (*Id.*) Thompson says that he told Hoover that he was "always tired," when he "would work out [he] couldn't sweat," and his weight continued to increase. (*Id.*, PageID.8.) In response, Hoover "increase[d]" Thompson's medication. (*Id.*) Also, in 2015, Hoover and Dye recommended that Thompson have a sleep study

4

conducted. (*See* Obj., ECF No. 51, PageID.343.)[2]  Thompson concedes that he "put off" the sleep study twice in order to focus on his "criminal case." (*Id.*)

Thompson says that on June 30, 2021, his "kidneys finally failed" and he was "rush[ed] to the hospital" with elevated potassium levels. (*Id.*)  There, he began dialysis treatment. (*See id.*, PageID.8-9.)  "After some lab work," a new provider "asked [Thompson] if [he] had ever had a sleep study." (*Id.*, PageID.9.)  Thompson said that he had not, and he then underwent a sleep study. (*Id.*)  The report from the sleep study "showed a severe case of sleep apnea." (*Id.*)  He was issued a Continuous Positive Air Pressure ("CPAP") machine to treat the sleep apnea. (*See id.*, PageID.7.) He says that "[s]ince being on a CPAP machine [his] blood pressure is finally under control." (*Id.*)  Thompson contends that it only when he was given the CPAP machine that he "found out that sleep apnea, hypertension, and [chronic kidney disease] were related." (*Id.*)  And he says that "[h]ad a sleep study been done between 2011 to 2022" at either the Saginaw Correctional Facility or the Muskegon Correctional Facility, he "wouldn't be here on dialysis." (*Id.*, PageID.7.)

---

[2] This admission in Thompson's objections to the Limitations R&R contradicts the allegations in his Complaint that "had Kandulski . . . [Hoover], and Dye just ordered a sleep study early in the beginning stage, there is a good chance [he] wouldn't be on dialysis." (Compl., ECF No. 1, PageID.10.)

5

**B**

On July 30, 2024, Thompson filed this action under 42 U.S.C. § 1983 claiming that Kandulski, Kemp, Hoover, and Dye denied him medical care in violation of the Eighth Amendment. (*See id.*)

Hoover and Dye filed motions to dismiss on the basis that Thompson's claims are time-barred. (*See* Mots., ECF Nos. 16, 33.)  The Magistrate Judge agreed and recommended the Court grant those motions. (*See* Limitations R&R, ECF No. 48.)  The Magistrate Judge explained that Thompson's claims under Section 1983 are subject to a three-year statute of limitations, and he noted that the latest point at which Hoover and Dye could have provided Thompson medical care was September of 2020, more than three years before Thompson filed this action.  Therefore, the Magistrate Judge concluded that Thompson's claims against Hoover and Dye were time barred. (*See* Limitations R&R, ECF No. 48, PageID.325-326.)  The Magistrate Judge also, *sua sponte*, found that the claim against Kandulski was time-barred as well, and he recommended that the Court dismiss that claim pursuant to 28 U.S.C. § 1915(e). (*See id.*)  The Magistrate Judge noted that Thompson alleges that he ceased being under Kandulski's care in 2014, approximately ten years before Thompson brought this action. The Magistrate Judge therefore concluded that Thompson's claims against Kandulski were barred by the statute of limitations.

Kemp also filed a motion to dismiss. (*See* Mot., ECF No. 24.) While Thompson initially filed a response in opposition to the motion (*see* Resp., ECF No. 31), he later filed a motion to amend the Complaint in which he "ask[ed] the Court to remove Anjanette Kemp from the Complaint" and stated that he sought to proceed only against the remaining three Defendants. (*See* Mot. to Amend, ECF No. 43, PageID.302.) The Magistrate Judge then issued the Amendment R&R, in which he recommended that the Court grant Thompson's motion to amend and deny Kemp's motion to dismiss as moot. (*See* Amendment R&R, ECF No. 46.)

## C

Thompson has now filed objections to the Limitations R&R. (*See* Obj., ECF No. 51.) For the reasons explained below, the Court **OVERRULES** Thompson's objections.

## II

When a party objects to portions of a Magistrate Judge's report and recommendation, the Court reviews those portions *de novo*. See Fed. R. Civ. P. 72(b)(3); *Lyons v. Comm'r of Soc. Sec.*, 351 F.Supp.2d 659, 661 (E.D. Mich. 2004). The Court has no duty to conduct an independent review of the portions of the R&R to which the parties did not object. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985).

## III

Before turning to Thompson's objections, the Court begins with a brief overview of the nature of Thompson's claims against Hoover, Dye, and Kandulski and a brief explanation as to why, as the Magistrate Judge concluded, those claims are barred by the statute of limitations.

### A

Prisoners have a constitutional right to medical care under the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 103 (1976). To establish a denial of medical care in violation of the Eighth Amendment, a prisoner must establish an objective and a subjective component. *See Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018). The objective component requires the prisoner to "prove that the alleged deprivation of medical care was serious enough to violate the Eighth Amendment." *Id.* Where a prisoner "has received on-going treatment for his condition and claims that this treatment was inadequate, the objective component . . . requires a showing of care 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Id.* (quoting *Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005)). The subjective component requires a prisoner to show that the defendants acted with "deliberate indifference" to the prisoner's health or safety – *i.e.*, consciously disregarded a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834, 839 (1994).

Further, a defendant may be held liable for a denial of medical care only if the defendant personally participates in that denial. *See Pineda v. Hamilton Cnty.*, 977 F.3d 483, 491 (6th Cir. 2020) ("Section 1983 imposes liability only on a defendant who was personally involved in the unconstitutional action that caused the plaintiff's injury.").

## B

"Because Congress did not specifically adopt a statute of limitations governing § 1983 actions, 'federal courts must borrow the statute of limitations governing personal injury actions in the state in which the [Section] 1983 action was brought.'" *Wolfe v. Perry*, 412 F.3d 707, 713–14 (6th Cir. 2005) (quoting *Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003). In Michigan, the "appropriate statute of limitations" for a Section 1983 claim is the "state's three-year limitations period for personal injury claims." *Id.* (citing Mich. Comp. Laws § 600.5805(10)). While state law provides the proper statute of limitations to be applied, "courts determine the accrual date of [Section] 1983 claims using *federal* standards." *Coleman v. Hamilton Cnty. Bd. of Cnty. Comm'rs*, 130 F.4th 593, 602 (6th Cir. 2025) (emphasis in original).

## C

The Magistrate Judge correctly concluded that Thompson's Eighth Amendment claims against Kandulski, Hoover, and Dye are time-barred. Start with

the claims against Kandulski. Thompson alleges that Kandulski failed to send him to a specialist as recommended by the hospital and failed to place him on a low potassium diet. These claims are time-barred because Thompson was under Kandulski's care between 2011 and 2014 (and there is no allegation that Kandulski provided any care to or interacted with Thompson at any time after 2014), but Thompson did not assert the claims against Kandulski until 2024 – long after the three-year limitations period had expired.

Thompson's claims against Hoover and Dye are time-barred for the same reasons. He alleges that they failed to order a sleep study to investigate the cause of his kidney issues. But he was last under their care in 2020, and he does not allege that they treated him or that he had any interactions with them after 2020. Since, as noted above, he did not file this action until 2024, the claims against Hoover and Dye are time-barred.

## IV

The Court now turns to Thompson's objections. He does not object to the Magistrate Judge's conclusion that, on their face, his claims are time-barred. Instead, he presents five numbered objections in which he contends that his claims are not time-barred because the acts and omissions by Hoover, Dye, and Kandulski amounted to "continuing violations" and/or caused "continuing harms" that

extended the accrual of his causes of action. (Obj., ECF No. 51.) For the reasons explained below, the Court disagrees.

## A

"A continuing violation can delay accrual of plaintiffs' causes of action." *Brown v. Louisville-Jefferson Cnty. Metro Gov't*, 135 F.4th 1022, 1034 (6th Cir. 2025). A continuing violation occurs where (1) "the defendant's wrongful conduct . . . continue[s] after the precipitating event that began the pattern," (2) "injury to the plaintiff . . . continue[d] to accrue after that event," and (3) "further injury to the plaintiffs [was] avoidable if the defendants had at any time ceased their wrongful conduct." *Tolbert v. State of Ohio Dep't of Transp.*, 172 F.3d 934, 940 (6th Cir. 1999).[3] "A continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007) (quoting *Tolbert*, 172 F.3d at 940)). Further, "[p]assive inaction does not support a continuing violation theory." *Id.*

The continuing violation doctrine "rarely extends" to Section 1983 actions. *Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003). *See also Howell*, 758 F. App'x

---

[3] A second category of continuing violations exists where "the defendant has committed several distinct acts of wrongdoing, and the cumulative effect of these acts amounted to a constitutional violation." *Brown*, 135 F.4th at 1035. Thompson does not allege that this category applies, so the Court need not, and does not, consider this second category of continuing violations here.

480, 485 (6th Cir. 2018) ("The continuing-violation doctrine rarely applies to § 1983 claims[.]"); *Tolbert*, 172 F.3d at 940 ("[T]he continuing violation theory is rarely successful outside of the Title VII discrimination area.").

**B**

In Thompson's first objection – "Allegations against . . . Kandulski" – he argues that Kandulski committed a "continuing wrong" by failing to follow the hospital's recommendations after Thompson went to the emergency room in 2011. (Obj., ECF No. 51, PageID.342.) And he says that that "continuing wrong" was "passed on to . . . Hoover and . . . Dye." (*Id.*)

Thompson has not established that Kandulski's conduct amounted to a continuing wrong. As described above, Thompson challenges Kandulski's failure to send Thompson to a specialist and place him on a low potassium diet line after his hospital visit in 2011. Thus, the denial of medical care, if any, occurred at that time. And while Thompson may have experienced continuing effects to his health from Kandulski's claimed failure to refer Thompson to a specialist, those effects do not amount to a continuing violation. *See Eidson*, 510 F.3d at 635 ("A continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." (quoting *Tolbert*, 172 F.3d at 940)).

For these reasons, Thompson has not established that the continuing violation theory saves his claims against Kandulski.

## C

The Court next turns to Thompson's second objection. In that objection – "Allegations against . . . Hoover and . . . Dye" – Thompson argues that "[a]fter 2015," when he twice declined the sleep study, the "continuing harm" was "still happening" and . . . Hoover and . . . Dye failed to "push the [sleep study] issue again." (*Id.*, PageID.343.) Stated another way, Thompson contends that his claims against Hoover and Dye are timely because their failure to push him to obtain a sleep study between 2015 and 2020 caused him "continuing harms" that extended into the limitations period.

Thompson's claim that Hoover and Dye committed a "continuing harm" against him fails for the same reasons that his "continuing harm" theory failed against Kandulski. More specifically, Thompson's contention that Hoover's and Dye's actions caused him a "continuing harm" is insufficient to establish a continuing *violation* such that it would render his claims timely. *See Eidson*, 510 F.3d at 635 ("A continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." (quoting *Tolbert*, 172 F.3d at 940)).

Thompson's claim against Hoover and Dye suffers from at least one additional problem. In his objection, Thompson acknowledges that, at least as of 2015, Hoover and/or Dye had twice recommended a sleep study and Thompson had twice declined that study. Such a refusal likely precludes his Eighth Amendment

13

Claim against Hoover and Dye. *See Palmer v. Wagner*, 3 F. App'x 329, 331 (6th Cir. 2001) ("[Plaintiff's] voluntary refusal to complete . . . treatment as ordered precludes an Eighth Amendment claim against [a physician assistant defendant]."); *Johnson v. Allen*, No. 15-cv-1329, 2016 WL 860428, at *4 (W.D. Mich. Mar. 7, 2016) ("Prison officials are not deliberately indifferent to a prisoner's serious medical needs when the prisoner refuses to accept medical treatment."). Under Thompson's own recitation of the facts, he cannot now say that Hoover and Dye wrongfully failed to order a sleep study while he was under their care.

**D**

The Court next addresses Thompson's third objection – titled "Summary Judgment Allegations." (Obj., ECF No. 51, PageID.343-344.) That objection largely restates the arguments that Thompson made in his first and second objections. He (again) claims that Kandulski failed to make a timely referral to a specialist. (*See id.*) And he (again) claims that Hoover's and Dye's failure to ask him about the sleep study again after 2015 amounted to a constitutional violation. (*See id.*) But for all of the reasons explained above, the Magistrate Judge correctly recommended dismissing these claims as time-barred.

**E**

The Court next takes up Thompson's fourth objection. In that objection, Thompson again argues that his claims were timely filed because Kandulski,

14

Hoover, and Dye participated in a "continuing harm" or "continuing wrong." (Obj., ECF No. 51, PageID.344-346.) But for all of the reasons explained above, Thompson has failed to allege sufficient facts to establish that Hoover, Dye, or Kandulski participated in a continuing violation or continuing wrong that extended into the limitations period. Again, all three stopped treating him well before the limitations period expired, and he does not allege that any of them committed any act or omission within the limitations period. At most, he alleges that he experienced continuing effects from acts and omissions taken by these Defendants outside of the limitations period, but, as described above, that does not render his claims timely.

F

1

The Court now turns to Thompson's fifth and final objection. In that objection, Thompson claims that, contrary to the Magistrate Judge's conclusion, the "[c]ontinuing [v]iolation [d]octrine [d]oes [s]ave Thompson's [c]laims." (Obj., ECF No. 51, PageID.346-348.) Thompson claims that under *Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2001), a violation is "'continuing,' signifying that a plaintiff can reach back to its beginning even if that beginning lies outside the statutory limitations period, when it would be unreasonable to require or even permit him to sue separately over every incident of the defendant's unlawful conduct." (Obj., ECF No. 51, PageID.346, quoting *Heard*, 253 F.3d at 318.) He contends that Kandulski's

15

violation was continuing because he "denied plaintiff access to outside medical personnel qualified to exercise judgment about a particular medical problem" when he failed to ensure Thompson saw a specialist. (*Id.*) And he argues that after 2015, Hoover and Dye "never again pushed for the sleep study" despite knowing that "the sleep study could have saved his kidneys[.]" (*Id.*, PageID.347.)

*Heard* does not support Thompson's position. In *Heard*, the plaintiff complained about injuries that were "the consequence of a numerous and continuous series of events." *Heard*, 253 F.3d at 319. There, the plaintiff developed a "prominent bulge in his groin that he suspected was a hernia," and he spent "months unsuccessfully demanding medical attention[.]" *Id.* at 317. He was eventually examined by a doctor who "discovered a ruptured hernia and recommended surgery," but "the jail refused to act on the recommendation." *Id.* The Seventh Circuit found that "every day that the defendants ignored the plaintiff's request for treatment increased his pain." *Id.* at 319.

As an initial matter, Hoover and Dye did not ignore Thompson's complaints. They "increase[d]" his medication (Compl., ECF No. 1, PageID.8) and ordered a sleep study, which he twice declined (*see* Obj., ECF No. 51, PageID.343). Thompson does not allege that he again requested a sleep study after he declined the exact study he claims he was entitled to, and Hoover an Dye would have had no reason to believe that Thompson would comply with the recommendation if they

16

recommended a sleep study a third time.  Second, and more importantly, the Seventh Circuit in *Heard* noted that the Eighth Amendment violation – the denial of medical care – only "continued for as long as the defendants had the power to do something about his condition, which is to say until he left the jail." *Id.* at 318.  Thus, even under *Heard*, and assuming the violations were continuing while Thompson was under their care, the last day that Hoover and Dye "had the power to do something" about Thompson's condition was, at the very latest, December 31, 2020.  Thus, to be timely, Thompson's Complaint must have been filed by December 31, 2023.  It was not.

**2**

Thompson's raises one final argument in his fifth objection.  Thompson contends that Hoover and Dye are liable because "prisoners may not refuse treatment that is necessary to save life." (Obj., ECF No. 51, PageID.346.)  He argues that Hoover and Dye "should have followed their constitutional duty to provide him with the medical treatment that the plaintiff needed," that his "refusals should have been ignored," and that they should have "pushed for the sleep study because this medical treatment outweighed those refusals." (Obj., ECF No. 51, PageID.347-348.)

This argument is beside the point because it does not address the fact that the claims are all time-barred.  Thus, even if the argument was correct, it would not save Thompson's claims.

17

# V

For all of the reasons explained above, Thompson's objections are **OVERRULED** and the recommended dispositions of the Limitations R&R and the Amendment R&R are **ADOPTED**. Hoover's and Dye's motions to dismiss are **GRANTED**. Further, Thompson's motion to amend the Complaint is **GRANTED**, and Kemp's motion to dismiss is **TERMINATED AS MOOT**. Finally, the claim against Kandulski is **DISMISSED**.

    IT IS SO ORDERED.

                                                  s/Matthew F. Leitman
                                                  MATTHEW F. LEITMAN
                                                  UNITED STATES DISTRICT JUDGE

Dated: July 31, 2025

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on July 31, 2025, by electronic means and/or ordinary mail.

                                                  s/Holly A. Ryan
                                                  Case Manager
                                                  (313) 234-5126